# UNITED STATES  DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

PERVIS WILLIAMS                                             CIVIL ACTION

versus                                                              NO. 12-1990

N. BURL CAIN, WARDEN                               SECTION: "C" (3)

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. § 2254(e)(2).  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Pervis Williams, is a state prisoner incarcerated at the Louisiana State Penitentiary, Louisiana.  On February 19, 2009, he was convicted of second degree murder under Louisiana law.[1]  On March 10, 2009, he was sentenced to a term of life imprisonment without

---

[1] State Rec., Vol. II of IV, transcript of February 19, 2009, p. 210; State Rec., Vol. I of IV, minute entry dated February 19, 2009; State Rec., Vol. I of IV, jury verdict form.

benefit of parole, probation, or suspension of sentence.[2]  On December 29, 2009, that conviction and

sentence were affirmed by the Louisiana Fifth Circuit Court of Appeal.[3]  The Louisiana Supreme

Court denied petitioner's related writ application on June 25, 2010.[4]

       Petitioner thereafter sought records and post-conviction relief from the state district

court.[5]  Ultimately, those efforts met with no success.[6]  He was likewise denied relief by the

Louisiana Fifth Circuit Court of Appeal on March 24, 2011,[7] and June 17, 2011,[8] and by the

Louisiana Supreme Court on April 13, 2012.[9]

       On July 30, 2012, petitioner filed the instant federal application for *habeas corpus*

relief.[10]  In its response, the state conceded that petitioner's federal application was timely filed but

---

[2] State Rec., Vol. II of IV, transcript of March 10, 2009; State Rec., Vol. I of IV, minute entry
dated March 10, 2009.

[3] State v. Williams, 30 So.3d 131 (La. App. 5th Cir. 2009) (No. 09-KA-491); State Rec., Vol. II
of IV.

[4] State v. Williams, 38 So.3d 337 (La. 2010) (No. 2010-KO-0172); State Rec., Vol. III of IV.

[5] State Rec., Vol. III of IV.

[6] State Rec., Vol. III of IV, Orders dated January 10, 2011, and April 7, 2011.

[7] State *ex rel.* Williams v. Cain, No. 11-KH-166 (La. App. 5th Cir. Mar. 24, 2011); State Rec.,
Vol. III of IV.

[8] State *ex rel.* Williams v. Cain, No. 11-KH-541 (La. App. 5th Cir. June 17, 2011); State Rec.,
Vol. III of IV.

[9] State *ex rel.* Williams v. State, 85 So.3d 1241 (La. 2012) (No. 2011-KH-1637); State Rec., Vol.
IV of IV.

[10] Rec. Doc. 1.  "A prisoner's habeas application is considered 'filed' when delivered to the
prison authorities for mailing to the district court."  Roberts v. Cockrell, 319 F.3d 690, 691 n.2 (5th
Cir. 2003).  Petitioner states that he placed his federal application into the prison mailing system on
July 30, 2012.  See Rec. Doc. 1, p. 15.

argued that it should nevertheless be dismissed because he failed to exhaust his remedies in state court with respect to his ineffective assistance of counsel claim.[11]  Petitioner thereafter filed a reply in which he requested that he be allowed to withdraw that claim and proceed with only his exhausted claim challenging the sufficiency of the evidence.[12]

## I.  Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both.  The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant

---

[11]  Rec. Doc. 13.

[12]  Rec. Doc. 15.

shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets, and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has explained:

> [A] state-court decision can involve an "unreasonable application" of this Court's clearly established precedent in two ways. First, a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the

facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

Williams v. Taylor, 529 U.S. 362, 407 (2000). The Supreme Court has noted that the focus of this inquiry "is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams that an unreasonable application is different from an incorrect one." Bell, 535 U.S. at 694; see also Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable."), cert. denied, 132 S.Ct. 1537 (2012).

## II. Facts

On direct appeal, the Louisiana Fifth Circuit Court of Appeal summarized the facts of this case as follows:

On October 21, 2006, 17-year-old Quantrelle Barbie died from a single gunshot wound to his head. Monntrell Barbie, the victim's younger brother, and Lloyd Thomas both identified defendant as the shooter. Both of these eyewitnesses testified at trial.

Monntrell testified that on the morning of the shooting, the victim told him that the previous night he was involved in a physical fight with defendant over a marijuana cigarette. According to Monntrell, he and his brother saw defendant the morning of the shooting and his brother and defendant exchanged "unfriendly" words. Monntrell testified that later that day, at approximately 11:00 a.m., as his brother was riding his bike toward him, he observed defendant come out of a high field of grass and shoot his brother. According to Monntrell, after his brother fell to the ground, defendant looked at him and then chased him with the gun and tried to shoot him, but the gun jammed. Monntrell ran to an apartment and asked

to use the phone.  He called 9-1-1 and told the police his brother had been shot.  Monntrell then left the apartment and went to someone else's house and laid down on the side of the bed because he was scared.  Monntrell eventually returned to the scene of the shooting, talked to the police, and then went to the police station.  Monntrell was shown a photographic lineup and selected defendant's photograph as the person who shot his brother.

Another witness, Lloyd Thomas, testified that he observed the shooting, which occurred at approximately 10:30 a.m.  He testified that he was riding his bicycle on Lac Couture Drive when he saw someone, whom he later identified as defendant, jump out from between two apartment buildings and confront a person riding a bicycle.  He testified that the victim got off the bicycle and put his hands up.  He said he heard the shooter say, "What now?"  He testified that defendant held a gun to the victim's head and shot him.  Mr. Thomas left the scene after defendant pointed the gun toward him.  Several hours later, Mr. Thomas had someone contact the police for him.   He subsequently identified defendant in a photographic lineup as the shooter.

Following police investigation and the positive identification of defendant by the two witnesses, defendant was arrested and charged with second degree murder.[13]

### III.  Petitioner's Claims

### A.  Sufficiency of the Evidence

Petitioner first claims that there was insufficient evidence to support his conviction.

On direct appeal, the Louisiana Fifth Circuit Court of Appeal rejected that claim, holding:

On appeal, defendant challenges the sufficiency of the evidence used to convict him of second degree murder.  He specifically argues that the State failed to prove his identity as the shooter.

The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), is whether after viewing the evidence

---

[13] State v. Williams, 30 So.3d 131, 132-33 (La. App. 5th Cir. 2009) (No. 09-KA-491); State Rec., Vol. II of IV.

–  6  –

in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Ortiz, 96-1609 (La. 10/21/97), 701 So.2d 922, 930, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998); State v. Bailey, 04-85 (La.App. 5 Cir. 5/26/04), 875 So.2d 949, 954-55, writ denied, 04-1605 (La. 11/15/04), 887 So.2d 476, cert. denied, 546 U.S. 981, 126 S.Ct. 554, 163 L.Ed.2d 468 (2005).

Under LSA-R.S. 14:30.1, second degree murder is defined as the killing of a human being when the offender 1) has specific intent to kill or to inflict great bodily harm; or 2) is engaged in the perpetration or attempted perpetration of one of several enumerated felonies, even though he has no intent to kill or to inflict great bodily harm. State v. Lewis, 05-170 (La.App. 5 Cir. 11/29/05), 917 So.2d 583, 589-90, writ denied, 06-0757 (La. 12/15/06), 944 So.2d 1277. In the instant case, the State proceeded under the first theory of second degree murder. As such, to prove second degree murder the State was required to prove (1) the killing of a human being, and (2) that the defendant had specific intent to kill or inflict great bodily harm. State v. Pagan, 04-1478 (La.App. 5 Cir. 5/31/05), 905 So.2d 435, 441, writ denied, 05–2003 (La. 2/17/06), 924 So.2d 1013.

In addition to proving the statutory elements of the charged offense at trial, the State is required to prove defendant's identity as the perpetrator. State v. Draughn, 05-1825 (La. 1/17/07), 950 So.2d 583, 593, cert. denied, 552 U.S. 1012, 128 S.Ct. 537, 169 L.Ed.2d 377 (2007). Where the key issue is identification, the State is required to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Ingram, 04-551 (La.App. 5 Cir. 10/26/04), 888 So.2d 923, 926.

In the present case, defendant does not argue that the State failed to establish any of the essential statutory elements of his conviction, but rather contends the State failed to prove beyond a reasonable doubt his identity as the offender. Defendant specifically argues that he could not have been the shooter because he was at home asleep at the time of the incident and further he had a cast on his right arm at the time, making it physically impossible for him to pull the trigger of a gun.

To support his alibi that he was asleep, defendant presented the testimony of his sister Charlene Williams. She testified that at the time of the incident she lived with her mother and defendant about a block and a half from where the murder occurred. She stated that on October 21, 2006, she had plans to go to Donaldsonville for a family

gathering and defendant had intended on going with her. However, when she was ready to leave, defendant was still asleep. After refusing to wait for him, she left her home between 11:30 and 11:45 a.m.

At trial, defendant testified in his own behalf. He denied killing the victim and claimed, in accordance with the testimony of his sister, that he was asleep at his home on the morning of October 21, 2006, at 11:30 a.m. He stated he was supposed to go to Donaldsonville with his sister that day, but had overslept. He stated that he finally got up between 1:30 and 2:00 p.m. and that his mother was home when he awoke.

In contrast to this alibi evidence, the State presented the testimony of two eyewitnesses who identified defendant as the shooter. Monntrell testified that he was a few feet from the shooter and was positive that defendant shot his brother. He testified that defendant was the shooter and chased him with a gun. Monntrell testified that he could never forget the face of the man who shot his brother, and that he knew defendant from the neighborhood.[FN1]

> [FN1] Monntrell testified that defendant was known around the neighborhood as "Diddy." However, defendant denied that his nickname was "Diddy."

Mr. Thomas testified that he was approximately ten or fifteen feet away from the shooting. He testified that he was positive defendant was the shooter. Mr. Thomas testified that although he did not know defendant's name, he knew defendant from previously playing basketball with him.

Moreover, Detective Roger Gorumba of the Jefferson Parish Sheriff's Office testified that both Monntrell and Mr. Thomas identified defendant as the shooter in photographic lineups. He explained that both witnesses were familiar with defendant from the neighborhood prior to the shooting. Detective Gorumba testified that he did not suggest the shooter to them or tell them they had to make an identification. He also denied threatening or coercing them to make the identifications.

In further support of his theory of misidentification, defendant argues that it was physically impossible for him to have shot the victim because his right hand was broken and in a cast. Defendant presented testimony that he was unable to use his right hand at the time of the incident. Defendant's sister testified that in September of 2006, defendant, who was right-handed, broke his right hand. She

explained that defendant had a hard cast on his arm that went from his fingertips to above his elbow. She stated that each of defendant's fingers had its own slot with only his fingertips showing. She testified that defendant could not bend his fingers and that he could not write.

Defendant testified that he was right-handed and broke his right hand on September 15, 2006, because he got into a fight while playing basketball. He testified that he had a cast from above his elbow to the tip of his hand, with only his fingertips exposed. He testified that the cast was removed while he was in jail and that he had written a "sick call to medical" to alert them that the cast needed to come off. He testified that he wrote it with his left hand because he could not write with his right hand due to the cast. Defendant also testified that he initialed the waiver of rights form with his left hand and did not sign his name because he could not write. Further, he testified that he was unable to hold a gun in his right hand because the cast extended from the top of his elbow to his fingertips. At trial, defendant showed the jury his fingers and how he could not straighten his fingers completely.

Further, the parties stipulated to the testimony of Dr. Charles Stevens that defendant's right hand had a complete transverse fracture involving the mid-shaft of the second metacarpal with mild distraction and angulation.

In contrast to defendant's allegation that he could not use his right hand, the State presented the testimony of Captain Thornton, who testified that defendant had a cast but was still able to put the pen in his hand and author his initials on the waiver of rights form. Captain Thornton stated that defendant did not express difficulty in holding the pen and putting his initials and that he did not express a reluctance to writing. He testified that defendant was right-handed and that he did not notice any restriction in the way defendant conducted his right hand. He testified that he asked defendant to sign the rights form, but that instead of his signature defendant wrote his initials.

Moreover, Mr. Thomas testified that the shooter had a cast that allowed his fingers to move. He testified that defendant was able to use his trigger finger on the morning of the shooting and that he saw defendant shoot the gun despite the cast. He testified that he saw defendant's fingers move and that he was gripping the pistol. Detective Gorumba testified that Mr. Thomas told him the shooter held the gun in his right hand.

Monntrell testified that defendant had a cast on his arm on the day of the shooting, but he could not recall which arm the cast was on. He then remembered that he told the police that he thought defendant's cast was on his left arm. Monntrell was asked what would he say if defendant had a cast on his right arm and was right-handed and claimed he could not do the shooting that way. Monntrell responded, "I know it was him that did it."

Although defendant claimed he could not have been the shooter because he was asleep at the time and had a broken hand, the jury chose to believe the two eyewitnesses who testified that they saw defendant, whom they knew prior to the incident, shoot the victim while wearing a cast. Positive identification by only one witness is sufficient to support a conviction. State v. Harris, 07-124 (La.App. 5 Cir. 9/25/07), 968 So.2d 187, 193.

In support of his insufficiency claim, defendant further attacks the credibility of the State's witnesses and makes references to discrepancies in their testimonies. We acknowledge some inconsistencies in the testimony. Mr. Thomas testified that he was approximately ten or fifteen feet away from the shooting whereas in his statement to Detective Gorumba he claimed that he was fifteen to twenty feet away. Also, Mr. Thomas recalled telling the police that the shooter shot the victim at pointblank range whereas the autopsy report reflected the victim died of a distant gunshot wound. Mr. Thomas told the police there was one gunshot, while Monntrell recalled telling the police that he heard two gunshots. There were also discrepancies in the testimony regarding where defendant emerged from prior to the shooting and also who was present at the time of the shooting.

The jury heard all the inconsistencies in the evidence presented and obviously found the State's witnesses more credible than the defense witnesses. The credibility of witnesses presenting conflicting testimony on factual matters is within the sound discretion of the trier of fact. The trier of fact shall evaluate the witnesses' credibility, and when faced with a conflict in testimony, is free to accept or reject, in whole or in part, the testimony of any witness. It is not the function of the appellate court to second-guess the credibility of witnesses as determined by the trier of fact or to reweigh the evidence absent impingement on the fundamental due process of law. State v. Jones, 08-20 (La.App. 5 Cir. 4/15/08), 985 So.2d 234, 240. The jury was presented with all of the evidence and obviously rejected defendant's theory that he was not the person who killed the victim.

> Viewing the evidence in a light most favorable to the prosecution, we find that a rational trier of fact could have found that the State proved beyond a reasonable doubt the essential elements of the crime, including defendant's identity as the perpetrator of the offense. Accordingly, the arguments raised by defendant in this assigned error are without merit.[14]

The Louisiana Supreme Court then denied petitioner's related writ application without assigning additional reasons.[15]

Because a sufficiency of the evidence claim presents a mixed question of law and fact, this Court must defer to the state court's decision rejecting petitioner's claim unless he shows that the decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Taylor v. Day, Civ. Action No. 98-3190, 1999 WL 195515, at *3 (E.D. La. Apr. 6, 1999), aff'd, 213 F.3d 639 (5th Cir. 2000). For the following reasons, the Court finds that petitioner has made no such showing.

As correctly noted by the state court, claims of insufficient evidence are to be analyzed pursuant to the standard set forth in Jackson v. Virginia, 443 U.S. 307 (1979), which held that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319. Accordingly, "[t]he Jackson inquiry 'does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a

---

[14] Williams, 30 So.3d at 133-36; State Rec., Vol. II of IV.

[15] State v. Williams, 38 So.3d 337 (La. 2010) (No. 2010-KO-0172); State Rec., Vol. III of IV.

*rational* decision to convict or acquit.'" Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001) (quoting Herrera v. Collins, 506 U.S. 390, 402 (1993)) (emphasis added). Moreover, Louisiana's circumstantial evidence standard requiring that the every reasonable hypothesis of innocence be excluded does *not* apply in federal *habeas corpus* proceedings; in these proceedings, *only* the Jackson standard need be satisfied, even if state law would impose a more demanding standard of proof. Foy v. Donnelly, 959 F.2d 1307, 1314 n.9 (5th Cir. 1992); Higgins v. Cain, Civ. Action No. 09-2632, 2010 WL 890998, at *21 n.38 (E.D. La. Mar. 8, 2010), aff'd, 434 Fed. App'x 405 (5th Cir. 2011), cert. denied, 132 S.Ct. 1713 (2012); Williams v. Cain, No. 07-4148, 2009 WL 224695, at *4 (E.D. La. Jan. 29, 2009), aff'd, 408 Fed. App'x 817 (5th Cir. 2011); Wade v. Cain, Civil Action No. 05-0876, 2008 WL 2679519, at *6 (W.D. La. May 15, 2008) (Hornsby, M.J.) (adopted by Stagg, J., on July 3, 2008), aff'd, 372 Fed. App'x 549 (5th Cir. Apr. 9, 2010).

In the instant case, petitioner was identified as the shooter by two eyewitnesses. That is more than adequate, in that, under both federal and Louisiana law, the testimony of a single eyewitness is generally sufficient to support a conviction. See United States v. King, 703 F.2d 119, 125 (5th Cir. 1983); State v. Neal, 796 So.2d 649, 658 (La. 2001); see also Phillips v. Cain, Civ. Action No. 11-2725, 2012 WL 2564926, at *13 (E.D. La. Apr. 11, 2012), adopted, 2012 WL 2565025 (E.D. La. July 2, 2012).

To the extent that petitioner is contending that eyewitness identifications were unreliable, that contention clearly has no merit. This is not a case in which the identifications were based on a brief encounter with a stranger; on the contrary, both eyewitnesses knew petitioner.[16]

---

[16] State Rec., Vol. I of IV, transcript of February 18, 2009, pp. 28, 42, 61-62, and 73.

Where, as here, the witnesses clearly observed the perpetrator and recognized him as someone they already knew, there simply is no "substantial likelihood of irreparable misidentification." <u>See</u> <u>United States v. Hefferon</u>, 314 F.3d 211, 219 (5th Cir.2002); <u>United States v. Buckhalter</u>, 986 F.2d 875, 878 (5th Cir.1993); <u>Sholes v. Cain</u>, Civ. Action No. 06-1831, 2008 WL 2346151, at *16 (E.D. La. June 6, 2008), <u>aff'd</u>, 370 Fed. App'x 531 (5th Cir. 2010); <u>see also</u> <u>Phillips</u>, 2012 WL 2564926, at *14.

Further, to the extent that petitioner is contending that eyewitnesses were not credible, that was an issue for the jury, not a federal *habeas* court. Where a petitioner's insufficient evidence claim is based on the credibility of witnesses, a federal *habeas* court generally will not grant relief. <u>See</u> <u>Schlup v. Delo</u>, 513 U.S. 298, 330 (1995) ("[U]nder <u>Jackson [v. Virginia</u>, 443 U.S. 307 (1979)], the assessment of the credibility of witnesses is generally beyond the scope of review."); <u>Ramirez v. Dretke</u>, 398 F.3d 691, 695 (5th Cir. 2005) ("All credibility choices and conflicting inferences are to be resolved in favor of the verdict."); <u>McCowin v. Scott</u>, No. 93-5340, 1994 WL 242581, at *2 (5th Cir. May 26, 1994) (A "challenge of the jury's credibility choice fails to satisfy the <u>Jackson</u> standard for habeas relief."); <u>Phillips</u>, 2012 WL 2564926, at *14; <u>Picou v. Cain</u>, Civ. Action No. 06-6258, 2007 WL 1521021, at *5 (E.D. La. May 22, 2007).

For the reasons noted by the state court, the evidence presented in the instant case, including the testimony provided by two eyewitnesses who already knew the perpetrator, viewed in the light most favorable to the prosecution, was clearly sufficient for any rational trier of fact to find petitioner guilty beyond a reasonable doubt. Therefore, he cannot show that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly

established federal law, as determined by the Supreme Court of the United States. Accordingly, this Court should defer to the state court's decision rejecting that claim.

### B. Ineffective Assistance of Counsel

Petitioner also claimed that he received ineffective assistance of counsel. As noted, the state argued that this claim was unexhausted and therefore petitioner's federal application was a "mixed" petition subject to dismissal without prejudice. See Alexander v. Johnson, 163 F.3d 906, 908 (5th Cir. 1998) ("A habeas petition containing both exhausted and unexhausted claims is a 'mixed' petition which should be dismissed without prejudice."). Petitioner then filed a reply to the state's response in which he indicated that, "in an abundance of caution," he was willing to withdraw that claim and proceed with only his exhausted claim.[17]

The Court notes that it does appear that petitioner's ineffective assistance of counsel claim is unexhausted. Pursuant to 28 U.S.C. § 2254(b)(1)(A), a petitioner normally must first exhaust his remedies in state court before seeking *habeas corpus* relief. "To exhaust, a petitioner must have fairly presented the substance of his claim to the state courts." Wilder v. Cockrell, 274 F.3d 255, 259 (5th Cir. 2001) (internal quotation marks omitted). Generally, the federal exhaustion requirement is satisfied only when the grounds urged in a federal petition were previously presented to the state's *highest* court in a procedurally proper manner according to state court rules. Dupuy v. Butler, 837 F.2d 699, 702 (5th Cir. 1988).

Petitioner's ineffective assistance of counsel claim was first raised in the state post-conviction proceedings. However, his writ application filed with the Louisiana Supreme Court in

---

[17] Rec. Doc. 15.

those proceedings did not expressly mention the claim.  Rather, in that writ application, which was filed in Case Number 11-KH-1637 and appears in Volume IV of the state court record, petitioner merely argued that the Court of Appeal erred in denying relief because he had not been granted access to the documents needed to support his claims and given an opportunity to supplement his post-conviction application.  That is problematic for the following reasons.

In <u>Baldwin v. Reese</u>, 541 U.S. 27 (2004), the United States Supreme Court explained that claims are unexhausted unless they are *expressly* raised by a petitioner in his state-court petition, brief, or similar document.  In that case, the Supreme Court rejected inmate Reese's argument that his claims were fairly presented to the Oregon Supreme Court because the justices of that court had the "opportunity" to review the lower court records when deciding whether to grant discretionary review.  The United States Supreme Court rejected that argument, holding:

> We recognize that the justices of the Oregon Supreme Court did have an "opportunity" to read the lower court opinions in Reese's case.  That opportunity means that the judges *could* have read them. But to say that a petitioner "fairly presents" a federal claim when an appellate judge can discover that claim only by reading lower court opinions in the case is to say that those judges *must* read the lower court opinions – for otherwise they would forfeit the State's opportunity to decide that federal claim in the first instance.  In our view, federal habeas corpus law does not impose such a requirement.
> For one thing, the requirement would force state appellate judges to alter their ordinary review practices.  Appellate judges, of course, will often read lower court opinions, but they do not necessarily do so in every case.  Sometimes an appellate court can decide a legal question on the basis of the briefs alone.  That is particularly so where the question at issue is whether to exercise a discretionary power of review, i.e., whether to review the merits of a lower court decision.  In such instances, the nature of the issue may matter more than does the legal validity of the lower court decision. And the nature of the issue alone may lead the court to decide not to hear the case.  ...

> For another thing, the opinion-reading requirement would impose a serious burden upon judges of state appellate courts, particularly those with discretionary review powers. Those courts have heavy workloads, which would be significantly increased if their judges had to read through lower court opinions or briefs in every instance.

Baldwin, 541 U.S. at 31-32. The Supreme Court therefore held that a claim is not "fairly presented" to a court for exhaustion purposes "if that court must read beyond a petition or a brief (or a similar document)." Id. at 32.

As noted, petitioner did not ask the Louisiana Supreme Court to review the substance of his underlying ineffective assistance claim. Further, he has pointed to no authority suggesting that the justices of that court would have, unasked, reviewed that claim, and there is simply no reason to believe they in fact did so. Petitioner presented the justices with a narrow procedural issue, and the justices were not required to consider the merits of his underlying substantive claim in order to determine the merits of that procedural issue. Therefore, it is at least arguable that the ineffective assistance of counsel claim is unexhausted. See Patterson v. Cain, Civ. Action No. 10-4587, 2012 WL 1933748, at *4 (E.D. La. May 29, 2012).

It is also clear that a petitioner may avoid dismissal of a "mixed" petition by "amending or resubmitting the habeas petition to present only exhausted claims to the district court." Rose v. Lundy, 455 U.S. 509, 510 (1982); see also Neslo v. Cain, No. 97-31025, 1998 WL 546499, at *1 (5th Cir. Aug. 10, 1998) ("Prisoners who submit mixed petitions are entitled to resubmit a petition with only exhausted claims or to exhaust the remainder of their claims."). Accordingly, it is recommended that petitioner's request to withdraw his ineffective assistance of counsel claim be **GRANTED**.

However, in the event that the United States District Judge finds that petitioner's ineffective assistance of counsel claim is exhausted and therefore need not be withdrawn, the undersigned notes that the claim has no merit for the following reasons.

In Strickland v. Washington, 466 U.S. 668, 697 (1984), the United States Supreme Court established a two-prong test for evaluating such claims. Under that test, a petitioner must demonstrate both that counsel's performance was deficient *and* that the deficient performance prejudiced his defense. Id. at 697. A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. Strickland, 466 U.S. at 697.

To prevail on the deficiency prong of the Strickland test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. See Strickland, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690). A petitioner must overcome a strong presumption that the

conduct of his counsel falls within a wide range of reasonable representation. <u>See</u> <u>Crockett v.</u> <u>McCotter</u>, 796 F.2d 787, 791 (5th Cir. 1986); <u>Mattheson v. King</u>, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice with respect to trial counsel, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694. In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." <u>Id</u>. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." <u>Crockett</u>, 796 F.2d at 793.

Petitioner's ineffective assistance of counsel claim was rejected by the state courts in the post-conviction proceedings. The state district court rejected the claim, holding:

> The petitioner has a Sixth Amendment right to effective counsel. Counsel's performance will be evaluated under the well-known test of <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To be successful in arguing ineffective assistance of counsel, a petitioner must prove deficient performance to the point that counsel is not functioning as counsel within the meaning of the Sixth Amendment. A petitioner must also prove actual prejudice to the point that the results of the trial cannot be trusted. Both prongs of the <u>Strickland</u> test must be established before relief will be granted.
>
> There is a strong presumption that counsel's performance is within the wide range of effective representation. Effective counsel does not mean errorless counsel and the reviewing court does not judge counsel's performance based on hindsight, but rather determines whether counsel was reasonably likely to render effective assistance. <u>State v. Soler</u>, 93-1042 (La. App. 5 Cir. 4/26/94), 636 So.2d 1069, 1075.

As to petitioner's first claim, the petitioner contends that his trial attorney failed to investigate the case adequately. However, petitioner has failed to prove that counsel's performance in regard to preparation for trial was constitutionally inadequate. Petitioner does not show prejudice, and does not prove what a more thorough investigation or a more substantial defense would have provided, or how it would have changed the outcome of the trial.

As to petitioner's second claim, the court finds no merit. The officers did not offer medical expert testimony, but merely testified to what they witnessed and encountered in the course and scope of their investigation. The Court finds no deficiency in counsel's performance.

In connection with both of his claims in this application, the burden of proof in post-conviction proceedings is on the petitioner. La.C.Cr.P. art. 930.2. The petitioner has not met this burden on any of the claims raised. He is not entitled to post-conviction relief and the court will deny his application.[18]

When petitioner challenged that decision, the Louisiana Fifth Circuit Court of Appeal likewise denied relief, holding:

With regard to his claim of ineffective assistance of counsel, relator contended that his counsel failed to investigate the case adequately and failed to object to medical testimony offered by a lay person. However, relator only provided allegations of alleged deficiency without explaining how he was prejudiced or what would have been discovered to warrant a different trial outcome. The trial judge, in denying the application for post-conviction relief, found that relator failed to carry his burden on his claims made. LSA-C.Cr.P. art. 930.2. We find no error in this ruling of the trial court.[19]

Because petitioner failed to fairly present his ineffective assistance of counsel claim to the Louisiana Supreme Court, there is no indication that the claim was considered by that court.

---

[18]  State Rec., Vol. III of IV, Order dated January 10, 2011.

[19]  State *ex rel.* Williams v. Cain, No. 11-KH-166 (La. App. 5th Cir. Mar. 24, 2011); State Rec., Vol. III of IV.

Because a claim of ineffective assistance of counsel is a mixed question of law and fact, this Court must defer to the state court decisions rejecting petitioner's claims unless those decisions were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002).  Moreover, the United States Supreme Court recently explained that, under the AEDPA, federal *habeas corpus* review of ineffective assistance of counsel claims is in fact *doubly* deferential:

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable.  This is different from asking whether defense counsel's performance fell below Strickland's standard.  Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court.  Under AEDPA, though, it is a necessary premise that the two questions are different.  For purposes of § 2254(d)(1), an *unreasonable* application of federal law is different from an *incorrect* application of federal law.  A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.
>
> A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision.  Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004).  And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations."  Ibid.  "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court."  Knowles v. Mirzayance, 556 U.S. ____, ____, 129 S.Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

Harrington v. Richter, 131 S.Ct. 770, 785-86 (2011) (citation omitted).  The Supreme Court then

continued:

> It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.
>
> If this standard is difficult to meet, that is because it was meant to be.  As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.  It preserves authority to issue the writ in cases where there is *no possibility* fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no farther.  Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal.  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Id. at 786-87 (citations omitted; emphasis added).  The Supreme Court then explained that federal

*habeas corpus* review of ineffective assistance claims is therefore doubly deferential:

> Surmounting Strickland's high bar is never an easy task.  An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve.  Even under *de novo* review, the standard for judging counsel's representation is a most deferential one.  Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge.  It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence.  The question is whether an attorney's representation amounted to incompetence under prevailing professional norms,  not whether it deviated from best practices or most common custom.

> Establishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult. *The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.* The <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d). *When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard.*

<u>Id</u>. at 788 (citations omitted; emphasis added). For the following reasons, the Court finds that, under these stringently deferential standards, it simply cannot be said that relief is warranted in the instant case with respect to petitioner's ineffective assistance of counsel claim.

Petitioner first argues that his counsel was ineffective for failing to adequately investigate the case. However, a petitioner asserting a claim for inadequate investigation bears the burden to provide factual support as to what further investigation would have revealed. <u>See</u> <u>Moawad v. Johnson</u>, 143 F.3d 942, 948 (5th Cir. 1998); <u>see also</u> <u>Brown v. Dretke</u>, 419 F.3d 365, 375 (5th Cir. 2005); <u>Davis v. Cain</u>, Civ. Action No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008). In the instant case, petitioner has brought forth no evidence showing that further investigation would have revealed any information whatsoever which would have been beneficial to the defense. Without such evidence, he cannot make the required showing that he was prejudiced by the allegedly inadequate investigation and his claim necessarily fails. <u>Everett v. Louisiana</u>, Civ. Action No. 08-4745, 2009 WL 1971370, at *5 (E.D. La. July 7, 2009); <u>see also</u> <u>Twillie v. Rader</u>, Civ. Action No. 12-1421, 2012 WL 3990392, at *5 (E.D. La. Aug. 14, 2012), <u>adopted</u>, 2012 WL 3990490 (E.D. La. Sept. 10, 2012).

Petitioner next argues that counsel was ineffective for failing to interview and subpoena witnesses for the defense. That claim fails because petitioner has not shown that the proposed witnesses would have been available to testify at trial and that their testimony would have been beneficial to the defense. As the United States Fifth Circuit Court of Appeals has explained:

> Claims that counsel failed to call witnesses are not favored on federal habeas review because the presentation of witnesses is generally a matter of trial strategy and speculation about what witnesses would have said on the stand is too uncertain. For this reason, we require petitioners making claims of ineffective assistance based on counsel's failure to call a witness to demonstrate prejudice *by naming the witness, demonstrating that the witness was available to testify and would have done so, setting out the content of the witness's proposed testimony, and showing that the testimony would have been favorable to a particular defense.* This requirement applies to both uncalled lay and expert witnesses.

Woodfox v. Cain, 609 F.3d 774, 808 (5th Cir. 2010) (citations, quotation marks, and brackets omitted; emphasis added); see also Day v. Quarterman, 566 F.3d 527, 538 (5th Cir. 2009) ("[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense.").

Here, petitioner argues that counsel should have presented the testimony of a forensic expert and the doctor who put the cast on petitioner's hand. However, petitioner has produced no evidence whatsoever, such as affidavits from the proposed witnesses, demonstrating that they would have testified in a manner beneficial to the defense. Therefore, he clearly has not met his burden with respect to this claim. See, e.g., United States v. Cockrell, 720 F.2d 1423, 1427 (5th Cir. 1983)

(courts view "with great caution claims of ineffective assistance of counsel when the only evidence of a missing witness's testimony is from the defendant"); <u>Buniff v. Cain</u>, Civ. Action No. 07-1779, 2011 WL 2669277, at *3 (E.D. La. July 7, 2011); <u>Anthony v. Cain</u>, Civ. Action No. 07-3223, 2009 WL 3564827, at *8 (E.D. La. Oct. 29, 2009) ("This Court may not speculate as to how such witnesses would have testified; rather, a petitioner must come forward with evidence, such as affidavits from the uncalled witnesses, on that issue."); <u>Combs v. United States</u>, Nos. 3:08-CV-0032 and 3:03-CR-0188, 2009 WL 2151844, at *10 (N.D. Tex. July 10, 2009) ("Unless the movant provides the court with affidavits, or similar matter, from the alleged favorable witnesses suggesting what they would have testified to, claims of ineffective assistance of counsel fail for lack of prejudice."); <u>Harris v. Director</u>, TDCJ-CID, No. 6:06cv490, 2009 WL 1421171, at *7 (E.D. Tex. May 20, 2009) ("Failure to produce an affidavit (or similar evidentiary support) from the uncalled witness is fatal to the claim of ineffective assistance."). Accordingly, this claim should likewise be rejected.

Lastly, petitioner argues that his counsel should have objected to a police officer testifying as expert medical witness regarding petitioner's level of manual dexterity with his injured hand in a cast. Petitioner is apparently referring to the testimony of Captain Dennis Thornton, who stated that he watched petitioner initial his statement. Thornton testified that, despite petitioner's hand being in a cast, he was able to hold a pen and initial the document without any apparent difficulty or discomfort.[20] As noted by the state court in rejecting this claim, Thornton testified simply as a lay witness describing his personal observations; he did not testify as an expert on

---

[20] State Rec., Vol. II of IV, transcript of February 19, 2009, pp. 55-56.

whether petitioner's injury was such that it would have allowed him to shoot a gun. That testimony was therefore proper, and any objection to it would have been frivolous. Counsel is not ineffective for failing to lodge meritless objections. <u>Clark v. Collins</u>, 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite."); <u>see also</u> <u>United States v. Kimler</u>, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument ... cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue.").

In summary, petitioner has failed to demonstrate that the state court's decision rejecting his ineffective assistance of counsel claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, utilizing the AEDPA's doubly deferential standard applicable to such claims, this Court should likewise deny relief.

## RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that petitioner's request to withdraw his unexhausted ineffective assistance of counsel claim, Rec. Doc. 15, be **GRANTED**.

**IT IS FURTHER RECOMMENDED** petitioner's federal *habeas corpus* application asserting only his sufficiency of evidence claim be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district

court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[21]

New Orleans, Louisiana, this fourteenth day of January, 2013.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[21] <u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.